# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.P. and L.B.**

**No. 19-0650** (Putnam County 19-JA-9 and 19-JA-10)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.P., by counsel Shawn D. Bayliss, appeals the Circuit Court of Putnam County's June 19, 2019, order terminating her parental rights to K.P. and L.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Maggie Kuhl, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without imposing a less-restrictive dispositional alternative and by not granting her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2019, the DHHR filed an abuse and neglect petition against petitioner alleging that her drug abuse seriously impaired her parenting skills and abilities and that petitioner "knowingly allowed" L.B. "to be placed in unsafe conditions and environments." According to the DHHR, allegations of abuse and neglect spanned a period from October of 2018 until the filing of the petition in January of 2019. During that period, the DHHR received a report that L.B.—then five-years-old—had wandered into a place of business "unattended" after he "had been walking in traffic." According to the report, L.B. was only wearing sweatpants, with no shirt, socks, or shoes. The DHHR alleged that when contact was made with petitioner, she "appeared to be under the influence of an unknown substance" and was unable to tell police where the child was, stating "he

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

probably got out . . . while I was asleep, this happens all the time." After the petition's filing, petitioner moved for a preadjudicatory improvement period, which the circuit court denied. Additionally, the circuit court ordered petitioner to participate in inpatient drug treatment and to submit to a psychological evaluation.

At an adjudicatory hearing held in April of 2019, petitioner stipulated to the allegations that "her drug use and abuse . . . seriously impaired her parenting skills and abilities." The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, and the circuit court held the motion in abeyance, explaining it wanted to give petitioner "an opportunity to get a plan in place," as petitioner had not "done what's required" to that point.

In May of 2019, the circuit court held the final dispositional hearing. The DHHR recommended termination of petitioner's parental rights because of petitioner's failure to attend a multidisciplinary team meeting to develop her case plan and her failure to avail herself of drug or mental health services. Specifically, a DHHR worker testified that petitioner "continued to miss opportunities for treatment and failed to screen. [Petitioner] never followed through with her detox plan." Petitioner renewed her motion for a post-adjudicatory improvement period and asserted that "there is no viable evidence that [she] failed to act or performed any specific act for which she should have been adjudicated." The DHHR argued this statement made it impossible for petitioner to carry her burden for obtaining an improvement period and opposed the granting of an improvement period. The circuit court denied petitioner's motion and found that petitioner was not likely to participate in services to remedy the conditions of abuse and neglect in the home. Based upon the evidence presented, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that terminating petitioner's parental rights was necessary for the children's welfare. Ultimately, the circuit court terminated petitioner's parental rights by order entered on June 19, 2019. It is from the dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[2]L.B.'s father is deceased. According to the parties, the permanency plan for the child is adoption by his current foster parents. K.P. has achieved permanency in the custody of her nonabusing father.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in terminating her parental rights instead of imposing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5). Petitioner argues that the circuit court erred by finding "she cannot be successfully rehabilitated to the extent that she can become an effective parent." Upon our review, we find no error, given the overwhelming evidence that petitioner could not substantially correct the conditions that necessitated the petition's filing.

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

Despite stipulating that her drug addiction negatively impacted her ability to parent the children, petitioner failed to attend a multidisciplinary team meeting to formulate a case plan, comply with individualized drug counseling, or progress in the treatment of her drug addiction.[3] Indeed, petitioner acknowledged having "great difficulty in complying with the services recommended" and that it "is undisputed that [she] failed to fully avail herself of the services

---

[3]In arguing her first assignment of error, petitioner asserts that an infection prevented her full participation in services and that she "was at the cusp of [a] substantial change in her health circumstances by commencing treatment." Specifically, petitioner argues she was "scheduled to begin antibiotic treatment for her infection on June 4, 2019." The circuit court found, however, that petitioner was aware of her infection since at least October of 2018 but had "yet to avail herself of medical treatment" at the time of the dispositional hearing on May 30, 2019. As such, to the extent that petitioner's health negatively affected her participation in services, the circuit court considered this when terminating her parental rights.

offered to her by the DHHR." Clearly, sufficient evidence was presented to find that petitioner failed to follow through with her case plan and that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future.

However, petitioner argues that she would have fully participated in a post-dispositional improvement period and the circuit court erred by "ignoring her self-acknowledged improvements." West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." The circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Petitioner asserted in her request for a post-dispositional improvement period that "there is no viable evidence [she] failed to act or performed any specific act for which she should have been adjudicated." We have repeatedly held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Therefore, we find that the circuit court did not err in finding that petitioner was unlikely to fully participate in a post-dispositional improvement period.

While petitioner claims that she should have been granted a less-restrictive disposition because she might eventually be able to correct the conditions of abuse and neglect, we have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

4

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the record indicates that the children—including L.B., who has special needs—required continuity of care, stability, and permanency, which petitioner was unable to provide. Petitioner further asserts that, if she had received more time, the children's permanency would not have been affected because they were placed with a relative. However, the nature of the children's placement has no bearing on the appropriateness of the circuit court's findings upon which termination was based. Because termination of petitioner's parental rights was necessary for the children's welfare and there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future, we find no error in the circuit court's decision to terminate petitioner's parental rights rather than to employ a less-restrictive dispositional alternative.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation because "both [children] have a strong, long-standing bond with their mother" and petitioner's "conduct and lack of participation . . . is reflective of [her] addiction and her mental health and physical health issues but should not prevent her from having visitation." We disagree.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, there is no evidence that petitioner has a strong emotional bond with the children. K.P. has been residing with her father for approximately three years and stated that "she does not remember" when she last spoke with petitioner. L.B. previously reported he would like to continue residing with his foster family and not petitioner. Further, petitioner still has not corrected the conditions that led to her abuse of the children, including her untreated substance abuse. Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the children.

Accordingly, the circuit court's June 19, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:   April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison